NINA F. WILLIS,

                Plaintiff,

- versus -

VERIZON NEW YORK, INC., PAUL J.
MCILRAVY, and RICHARD M. KALISTA,

                Defendants.

MEMORANDUM
AND ORDER
11-CV-5078

A P P E A R A N C E S

    LAW OFFICES OF FREDERICK K. BREWINGTON
        556 Peninsula Boulevard
        Hempstead, New York 11550
    By:    Frederick K. Brewington
        *Attorney for Plaintiff*

    WHITE AND WILLIAMS LLP
        427 Bedford Road, Suite 250
        Pleasantville, New York 10570
    By:    Scott H. Casher
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        Nina F. Willis brings this action for employment discrimination – on the basis of race, color, and sex – against Verizon New York, Inc. ("Verizon") and Verizon employees Paul J. McIlravy and Richard M. Kalista. Willis initially filed her suit in the Supreme Court of the State of New York, raising both federal and state law claims. Defendants removed the case to this court pursuant to 28 U.S.C. § 1331 and filed an answer. Defendants now move for judgment on the pleadings on the grounds that all of Willis's claims are preempted under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and that Willis's breach

of contract claim fails to state a claim upon which relief can be granted. For the reasons provided herein, defendants' motion is denied in part and granted in part.

BACKGROUND

According to the complaint, the well-pleaded factual allegations of which I must assume are true, Willis began her employment with Verizon in January 1994. Compl. ¶ 14. After five years as an Operator and then ten years as an Office Assistant, Willis became a Field Technician in construction in April 2009. Compl. ¶¶ 15-16. Willis alleges that while she was a Field Technician, the defendants subjected her to a hostile work environment on the basis of her race, color, and sex. Specifically, her white male colleagues, who dominated the field, continuously referred to Willis in a derogatory manner; failed to disclose assignment locations to her and left her behind when they went to such locations; assigned her menial cleaning duties; and made numerous comments suggesting that she move to another department. Compl. ¶¶ 19-20, 22, 26. Willis's supervisors, McIlravy and Kalista, failed to take any action to correct these practices, and McIlravy affirmatively contributed to the hostile work environment by interrogating and reprimanding Willis on multiple occasions, without cause to do so. Compl. ¶¶ 21, 23.

Defendants also refused to allow Willis to drive a vehicle called the "Boom Truck," citing the fact that she did not have a commercial driver's license ("CDL"), even though white male employees who lacked a CDL were permitted to drive the Boom Truck. Compl. ¶ 25. Further, defendants failed to provide Willis with the tools she required to be successful in her position, including training and information on how to obtain a CDL, despite the fact that they provided such tools to her white male colleagues. Compl. ¶¶ 26, 41.

Willis made multiple complaints, to approximately fourteen different supervisors, about the discriminatory treatment she faced. Compl. ¶ 38. However, Willis's supervisors took no remedial action and instead retaliated against Willis for her complaints. Defendants moved Willis to an abandoned warehouse location, where she was stripped of mail, delivery, and clerical assignments and denied personal access to computers, telephone, and supplies. Compl. ¶ 44. Then, on October 30, 2009, Willis, who had completed the standard six-month probationary period for Field Technicians ten days earlier, was removed from her position as a Field Technician and placed back in her prior position of Office Assistant. Compl. ¶ 28.

Willis ultimately filed a charge of race, color, and gender discrimination against defendants with the New York State Division of Human Rights ("NYSDHR"). After NYSDHR granted Willis an annulment of her election of remedies, which permitted her to pursue her claims in court rather than continue through the NYSDHR administrative process, Willis filed a complaint in the Supreme Court of the State of New York, alleging federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well under 42 U.S.C. § 1981 and 42 U.S.C. § 1985, and state claims for violations of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, and for breach of contract. As mentioned above, defendants removed the case to this court, answered it, and then filed the instant motion for judgment on the pleadings.

DISCUSSION

A.  *Standard of Review*

A district court applies the same standard of review to a defendant's motion for judgment on the pleadings as it does to a motion to dismiss for failure to state a claim upon which relief can be granted. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.

3

2010). Thus the Court must accept plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).

B.  *Analysis*

Defendants claim that they are entitled to judgment on the pleadings because all of Willis's claims are preempted by § 301 of the LMRA, 29 U.S.C. § 185. Defendants also contend that Willis's breach of contract claim must be dismissed because it fails to state a claim upon which relief can be granted.

1.  *State Discrimination Claim*

Defendants contend that Willis's claim for race, color, and sex discrimination under the NYSHRL is preempted because it requires interpretation of the collective bargaining agreement ("CBA") between Verizon and its employees' union. Defendants assert that Willis held the position of Field Technician as part of her participation in the Telecommunication Technical Associate Next Step ("TTA") program and that the TTA program's terms and conditions were set forth in the CBA. Defendants also maintain that Verizon demoted Willis from Field Technician to her old position as Office Assistant in conformity with the "retreat" (*i.e.*, demotion) provisions in the CBA. Therefore, defendants' argument goes, in order to evaluate Willis's discrimination claim, the Court will be forced to interpret the CBA, rendering Willis's discrimination claim "inextricably intertwined" with the CBA and thus preempted under § 301.

> Section 301 of the LMRA provides:
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the

> parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This language both "provides federal-court jurisdiction over controversies involving collective-bargaining agreements, [and] also authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)) (internal quotation marks omitted). That Congress accorded such broad powers to the federal courts under § 301 reflects its intention that "doctrines of federal labor law uniformly . . . prevail over inconsistent local rules." *Allis-Chambers v. Lueck*, 471 U.S. 202, 209-10 (1985). Federal courts thus perform the important job of creating a uniform body of federal common law governing the interpretation of CBAs. Because a "state rule that purports to define the meaning or scope of a term in a [CBA] contract suit" would disturb the uniformity of federal common law regarding CBAs, such state rules are deemed preempted by § 301. *See id.*

Accordingly, state-law claims for the breach of a CBA are categorically preempted by § 301 because they ask the court to interpret the CBA pursuant to local law. In addition, § 301 preempts efforts to enforce state law rights and obligations that are created by a CBA, regardless of how those claims are styled. *Id.* at 210-11. Indeed, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted," even if no breach of the agreement is alleged. *Lingle*, 486 U.S. at 405-06.

However, although preemption under § 301 is broad, it is not endlessly so. When "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not

5

require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). As the Second Circuit has recognized, determining when a state-law claim "*depends* on an *interpretation*" of the collective-bargaining agreement," *see Hawaiian Airlines*, 512 U.S. 246, 261 (1994) (emphasis added), and when a contract term is *not* the *subject* of dispute despite the fact that the agreement must be *consulted* may be a difficult venture. *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir. 1997). A court must examine the elements of a plaintiff's state-law claim and carefully consider the claim's legal character and its relationship to the CBA. *See id.*

I thus turn to the elements of Willis's state-law discrimination claim. To prove her hostile work environment claim, Willis must show that the conduct of which she complains "(1) . . . create[d] an environment that a reasonable person would find hostile or abusive; (2) create[d] an environment that [she] subjectively perceive[d] as hostile or abusive; and (3) create[d] such an environment because of [her race, color, and/or gender]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)) (internal quotation marks omitted); *Moncriffe v. Classique Interiors & Design Inc.*, No. 09 Civ. 0986, 2011 WL 2224880, at *2 (E.D.N.Y. June 2, 2011) ("'The elements of a hostile work environment claim under NYHRL are identical to the elements required under the equivalent federal antidiscrimination laws.'" (quoting *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008))). To prove her retaliation claim, Willis must establish that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004).

Examining these elements, it is clear that Willis's claim does not depend on an interpretation of the CBA. The right Willis seeks to vindicate – her right to be free from race, color, and sex discrimination in the workplace – is a creature of New York statutory law, not of the CBA. And her success in proving the elements of her claims does not hinge upon the meaning of any of the terms of the CBA.

In contending otherwise, defendants point out ways in which CBA terms – particularly those regarding the TTA program and the parties' retreat rights – might become relevant as Willis attempts to prove her case. They contend that an interpretation of these terms, as set forth in the CBA, may become necessary. But the provisions they cite are not the subject of this dispute. The essence of Willis's complaint is not that defendants violated the CBA but that they subjected her to a hostile work environment because of her race, color, and sex and then demoted her because she complained about the hostile work environment. While provisions of the CBA may become relevant as the case progresses, Willis's state-law discrimination claim does not depend on such provisions and is thus not preempted.

My determination here is consistent with the vast weight of relevant authority. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court held that a state-law retaliatory discharge claim was not preempted by § 301. The Court noted that all of the elements of the claim – that the plaintiff was discharged or threatened with discharge in order to deter her from exercising her rights under the workers' compensation law – were "purely factual questions [that] pertain[ed] to the conduct of the employee and the conduct and motivation of the employer." *Id.* at 407. Accordingly, the claim did "not turn on the meaning of any provision of a collective-bargaining agreement" and was not preempted. *Id.* Willis's state-law discrimination claim likewise involves purely factual questions regarding the conduct of

Willis and the motivation and conduct of defendants, and defendants fail to offer any persuasive reason why, in contrast to *Lingle*, the claim somehow turns on the meaning of the CBA.

Similarly, in *Foy v. Pratt & Whitney Group*, 127 F.3d 229 (2d Cir. 1997), the Second Circuit found that § 301 did not preempt a state-law negligent misrepresentation claim asserted by ex-employees against their employer.[1] The Court found that although reference to and consultation of the CBA might become necessary as the case progressed, the elements of the claim were not substantially dependent upon analysis of the terms of the CBA. This was because plaintiffs' claim "depend[ed] upon the employer's behavior, motivation, and statements," not the actual meaning of the CBA, and state law, not the CBA, was the source of the right that plaintiffs sought to vindicate, *i.e.*, "the right to be free of economic harm caused by misrepresentation." *Id.* at 235. The Court explained the purposes of § 301:

> § 301 preemption applies only when necessary 'to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.'

*Id.* at 234 (quoting *Livadas*, 512 U.S. at 122-23). Finding that plaintiffs' claim would not undermine these purposes of § 301, the Court permitted it to proceed. *Id.* at 233-34; *see also Wynn v. AC Rochester*, 273 F.3d 153 (2d Cir. 2001) (finding state-law fraud claim not preempted by § 301 for same reasons).

Many district courts have also found § 301 preemption inapplicable in cases involving claims of discrimination similar to Willis's. *See, e.g.*, *London v. Sikorsky Aircraft*

---

[1] *Foy* discusses complete preemption, which is a jurisdictional doctrine, rather than ordinary preemption, which is an affirmative defense. However, in the context of § 301 the two doctrines are identical. *Sullivan v. Am. Airlines*, 424 F.3d 267, 275 (2d Cir. 2005) ("[I]n any particular [LMRA] case, the complete- and ordinary-preemption inquiries merge."). Accordingly, this Order does not hereafter distinguish between cases that discuss complete preemption and those that discuss ordinary preemption.

8

*Corp.*, 472 F. Supp. 2d 194, 197-99 (D. Conn. 2007) (§ 301 did not preempt age discrimination claim under Connecticut Fair Employment Practices Act); *Zuckerman v. Volume Servs. Am., Inc.*, 304 F. Supp. 2d 365, 371-72 (E.D.N.Y. 2004) (§ 301 did not preempt disability discrimination claim under NYSHRL); *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 178-84 (S.D.N.Y. 2003) (§ 301 did not preempt discrimination claim under the New York City Human Rights Law); *Curtis v. Airborne Freight Corp.*, No. 98 Civ. 4062, 1998 WL 883297, at *6 n.5 (S.D.N.Y. Dec. 17, 1998) (§ 301 did not preempt race discrimination claim under the NYSHRL). Following the logic of the decisions of these district courts, the Second Circuit, and the Supreme Court, as described above, I conclude that Willis's state-law discrimination claim is not preempted.

2. *Federal Discrimination Claims*

Defendants argue that Willis's federal claims – under Title VII,[2] 42 U.S.C. § 1981, and 42 U.S.C. § 1985 – are also preempted by § 301. Preemption, however, is a doctrine that operates with respect to state laws, by power of the Supremacy Clause of the Constitution. *See generally Gibbons v. Ogden*, 22 U.S. 1 (1824). Although a federal law may be partially repealed by another federal law, preemption doctrine is inapplicable when one federal law collides with another. Furthermore, as already discussed, the Supreme Court has held that preemption is required under § 301 in order to ensure the uniformity of federal labor law – that is, to permit the development of federal common law that governs the interpretation of CBAs free from interference of inconsistent state laws. *See Allis-Chambers*, 471 U.S. at 209-13. These concerns are inapposite with respect to federal laws.

---

[2] Acknowledging that Title VII does not give rise to liability against individuals, *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), Willis agreed at oral argument held on May 18, 2012 that her Title VII claims against Mcilravy and Kalista should be dismissed. I thus dismiss them.

9

Defendants cite to a handful of nonbinding cases for the proposition that § 301 preempts federal law in the same way – and to the same extent – that it preempts state law. *See, e.g.*, *Braxton v. Dillon Cos., Inc.*, 9 Fed. Appx. 919 (10th Cir. 2001); *Hoops v. Keyspan Energy*, No. 10 Civ. 2777, 2011 WL 5341400 (E.D.N.Y. Nov. 1, 2011); *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437 (S.D.N.Y. 2000). I find these cases either irrelevant or unpersuasive, and I decline to follow them.[3]

   3.   *State Contract Claim*

Defendants argue that plaintiff's contract claim is a claim for breach of the CBA and thus is squarely preempted by § 301. If defendants' characterization of this claim were correct, the claim would indeed be preempted. However, the complaint does not allege a breach of contract "between an employer and a labor organization representing employees." 29 U.S.C. § 185. Rather, it alleges that Verizon's employee handbook created an implied contract with Willis under which Verizon promised not to unlawfully discriminate against her, and that Verizon breached this implied contract. Compl. ¶ 83. Willis's claim is thus not preempted by § 301 because it asserts that defendants breached a contract that is independent of the CBA. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987) ("[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." (emphasis in original)).

However, Willis's contract claim fails for another reason urged by defendants. Willis simply alleges that the handbook "created [a] contract with [Willis] that [Verizon] would

---

[3] For example, *Hoops* discusses not preemption but whether a claim under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, was brought prematurely because it depended on the interpretation of the CBA. Defendants make no such argument here.

not unlawfully discriminate against [Willis] during their employment relationship." Compl. ¶ 83. This allegation, unaccompanied by any language from the employee handbook that purportedly created the contract, is a conclusory allegation that is not entitled to a presumption of truth on a motion for judgment on the pleadings. Without any further factual matter regarding the nature of the employee handbook's anti-discrimination guarantee, the complaint fails to state a claim upon which relief can be granted. *See, e.g.*, *Blaise-Williams v. Sumitomo Bank, Ltd.*, 592 N.Y.S.2d 41, 42 (1993) ("[A] general statement of equal opportunity and nondiscrimination contained in an employee handbook . . . , which is nothing more than a statement of existing law concerning discrimination, may not serve as a basis for a breach of contract claim.").

## CONCLUSION

For the reasons stated herein, the defendants' motion for judgment on the pleadings is granted with respect to Willis's breach of contract claim. On agreement of the parties, Willis's Title VII claim against the individual defendants is also dismissed with prejudice. The motion for judgment on the pleadings with respect to all other claims is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 22, 2012
      Brooklyn, New York